UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

RITA NOLAN,
Administrator of the Estate of
Kenneth Nolan,

    Plaintiff,

vs.

CLARK COUNTY BOARD OF
COUNTY COMMISSIONERS, *et al.*,

    Defendants.

Case No. 3:21-cv-330

District Judge Michael J. Newman
Magistrate Judge Caroline H. Gentry

---

**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 25); (2) DISMISSING WITHOUT PREJUDICE THE CLAIMS AGAINST DEFENDANTS CLARK COUNTY BOARD OF COMMISSIONERS, COMMISIONER MELANIE FLAX WILT, COMMISSIONER LOWELL R. MCGLOTHIN, COMMISSIONER RICHARD L. LOHNES, AND CLARK COUNTY SHERIFF DEBORAH K. BURCHETT; (3) DENYING THE MOTION WITH RESPECT TO DEFENDANTS BALLARD AND MCDUFFIE; AND (4) CLARIFYING THAT DEFENDANTS BALLARD, MCDUFFIE, AND SMITH REMAIN IN THE LITIGATION**

---

This wrongful death case, applying Ohio law, is now before the Court on a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings filed by Defendants Clark County Board of Commissioners ("Clark County"); Commissioners Melanie Flax Wilt, Lowell R. McGlothin, and Richard L. Lohnes (collectively, "the Commissioners"); Clark County Sheriff Deborah K. Burchett ("Sheriff Burchett"); Clark County Deputy Brandon McDuffie ("Deputy McDuffie"); and Nurse Janelle Ballard ("Nurse Ballard"). Doc. No. 25.[1] Plaintiff Rita Nolan, Administrator of the Estate of Kenneth Nolan ("the Estate"), opposes. Doc. No. 26. Defendants replied, making

---

[1] Defendant Wade G. Smith, M.D. does not move for dismissal. Therefore, this order does not affect the claims pled against him.

this motion ripe for review. Doc. No. 28.

I.

The following facts are taken as alleged in the amended complaint, the operative pleading for deciding this motion. Doc. No. 12. On November 20, 2019, police officers in Springfield, Ohio received reports of a commercial truck being driven erratically. *Id.* at PageID 33. According to the amended complaint, the decedent, Kenneth R. Nolan ("Kenneth"), was the driver. *Id.* While in a parking lot near the intersection of South Belmont Avenue and Sheridan Avenue in Springfield, Kenneth backed into an alley to turn around, but he struck a fence. *Id.* He then turned right on South Belmont, heading south. *Id.*

Springfield Police Department officers eventually pulled him over near the Wagon Wheel Bar at 1005 South Burnett Road in Springfield. *Id.* They approached the car and asked for Kenneth's license and registration. *Id.* at PageID 34. Immediately, the officers noticed that Kenneth "appeared uneasy on his feet and his speech was slowed" while he complied with their request. *Id.* As they questioned Kenneth about whether he hit anything with his truck, they again noted that his "speech was slow and he had many pauses." *Id.* Although he told the officers that he was not intoxicated and did not consume any alcohol or drugs, they administered a "Horizontal Gaze Nystagmus test" (*i.e.*, an eye test to detect intoxication) to verify his claims. *Id.*

Kenneth neither failed nor passed the test, but he was placed into custody because he could not focus on the pen the officers used to conduct the test. *Id.* He was taken first to the Springfield Police Department headquarters, where he gave a urine sample, but did not receive a breathalyzer or breath test. *Id.* at PageID 35. That night, he was booked into the Clark County Jail. *Id.* Deputy McDuffie performed a medical screening on Kenneth during his booking and concluded that he did not appear to be under the influence of drugs or alcohol. *Id.* Notably, Deputy McDuffie did not take Kenneth's temperature. *Id.*

Clark County Jail personnel called Rita Nolan, Kenneth's wife (and now-Administrator of his estate), to ask if Kenneth had any medical conditions, to which she replied that she was not aware of any. *Id.* She said that Kenneth seemed fine when he left that morning. *Id.*

Kenneth remained in jail that night until his court arraignment the next morning. *Id.* However, at the arraignment, Kenneth had trouble walking and fell to the ground. *Id.* He was taken back to jail. *Id.* at PageID 36.

Nurse Ballard serves as the dedicated jail nurse for the Clark County Jail. *Id.* at PageID 37. As alleged in the amended complaint, she runs several programs at the jail tasking her with the responsibility to treat inmates supposedly under the influence of drugs and alcohol. *Id.* She was specifically tasked with improving screening and testing procedures in the jail, including determining when an inmate has a medical condition that merits treatment. *Id.* After Kenneth's fall at the arraignment, Nurse Ballard received reports from other inmates in the jail that Kenneth "was trembling all over then passed out or had a seizure. He reportedly leaned against the wall and slid down[,]" so she came to see him. *Id.* at PageID 36. Moreover, he injured his elbow at some point before meeting with Nurse Ballard. *Id.*

Nurse Ballard found that Kenneth's blood pressure was elevated, his heart rate exceeded 130 beats per minute, and his skin was warm. *Id.* Yet after Kenneth swore to Nurse Ballard that he did not use drugs or alcohol, she left him in the general population of the jail—claiming she would monitor him closely and review his symptoms with Wade G. Smith, M.D., her supervisor. *Id.*

Once he returned to jail, Kenneth's symptoms worsened. *Id.* His heart rate accelerated to 141 beats per minute, he was unsteady on his feet, and he could not sit alone without agitation. *Id.* Once Nurse Ballard got word of this, she administered 100 mg of Librium—a medication used to

treat alcohol withdrawal—despite Kenneth's insistence that he was not intoxicated. *Id.*

After taking Librium, Kenneth began trembling, had a seizure, and passed out. *Id.* Noticing that he had a fever of 106 degrees, jail personnel transported him to the Springfield Regional Medical Center. *Id.* In intensive care, the doctors discovered that Kenneth had endocarditis—a heart infection—and sepsis. *Id.* at PageID 37. Kenneth died from his infection eight days later on November 29, 2019. *Id.*

The Estate now brings this lawsuit alleging, against each Defendant, a single count of wrongful death under Ohio law.[2] *See id.* at PageID 38–40. The Estate claims that all Defendants owed Kenneth a duty to provide him safe care, as well as maintain the jail in a manner that would prevent Kenneth's death. *Id.* In response, Defendants allege that Ohio's statutory immunity scheme shields them from liability. *See* Doc. Nos. 25, 28.

**II.**

Federal Rule of Civil Procedure 12(c), like all other Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Motions for judgment on the pleadings under Rule 12(c) are analyzed under the same standard as motions to dismiss under Rule 12(b)(6). *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quotation omitted). However, the court

---

[2] Sitting in diversity, federal courts apply "the choice of law rules and substantive law of the forum state." *Smith v. Gen. Motors, LLC*, 988 F.3d 873, 879 (6th Cir. 2021) (quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008)). Diversity jurisdiction exists here because all Defendants are Ohio citizens, and the Estate is considered a citizen of Illinois, as Kenneth was an Illinois citizen. *See* 28 U.S.C. § 1332(c)(2).

4

"need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 582–83 (quotation omitted).

"[D]istrict courts 'have a duty to address' . . . immunity when 'it is properly raised prior to discovery.'" *Myers v. City of Centerville*, 41 F.4th 746, 758 (6th Cir. 2022) (quoting *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004)) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002)). "A district court [is] required to determine—prior to permitting . . . discovery— whether [a] complaint" must be dismissed based on immunity. *Skousen*, 305 F.3d at 527. "[T]o dismiss [a plaintiff's] complaint at this stage, [the Court] must find that it is 'devoid of [allegations] tending to show that the [defendants] acted' as [the plaintiff] alleges[,]" meaning in a manner that abrogates their immunity. *Novak v. City of Parma*, 932 F.3d 421, 437 (6th Cir. 2019) (quoting *Irving v. Austin*, 138 N.E.2d 931, 934 (Ohio 2000)) (citing *Range v. Douglas*, 763 F.3d 573, 586 (6th Cir. 2014)).

Nonetheless, courts should remain "reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before discovery is conducted." *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013) (quotations omitted); *see Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017). "The fact-intensive nature of . . . immunity makes it often a bad fit for Rule 12(b)(6)." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020) (citing *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2016)); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal"). That is why even though "immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (cleaned up); *see also Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223,

5

235 (6th Cir. 2005) (Sutton, J., concurring).

### III.

The Estate's claim falls into two categories: (1) the claim as alleged against Clark County, the Commissioners, and Sheriff Burchett, in her official capacity (collectively, "the entity Defendants"); and (2) the claim as alleged against Deputy McDuffie and Nurse Ballard, both in their individual capacities. As to the individuals, the Estate claims they acted recklessly. Doc. No. 12 at PageID 39; Doc. No. 26 at PageID 102–06.

### A. Statutory Immunity for Clark County, the Commissioners, and Sheriff Burchett

In Ohio, "[t]he general rule is that political subdivisions are immune from tort liability." *Anderson v. Westlake*, 182 N.E.3d 1225, 1231 (Ohio Ct. App. 2021) (citing *Shalkhauser v. Medina*, 772 N.E.2d 129, 133 (Ohio Ct. App. 2002)). Determining the scope of liability requires a "three-tiered analysis." *Id.* (citing *Cater v. Cleveland*, 697 N.E.2d 610, 614–15 (Ohio 1998)). At the first tier, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). A "political subdivision" includes any "county," *id.* § 2744.02(F), or "the elected holder of an office of a political subdivision who is sued in an official capacity," *Lambert v. Clancy*, 927 N.E.2d 585, 591 (Ohio 2010). "The . . . maintenance, and operation of jails" is a "governmental function." Ohio Rev. Code § 2744.01(C)(1)(h).

This general rule bends under the second tier, which lists five exceptions. *See id.* § 2744.02(B). They are: (1) liability for injury, death, or loss to person or property caused by the negligent operation of a motor vehicle by an employee within the scope of their employment; (2) negligent performance of a proprietary function; (3) negligent failure to keep roads or bridges in

repair or free of obstruction; (4) employee negligence on the grounds or in buildings used in connection with that governmental activity and due to physical defects on or within those grounds or buildings; or (5) instances where immunity has been otherwise abrogated by statute. *Id.* § 2744.02(B)(1)–(5). If one of these exceptions applies, then Ohio courts proceed to the third tier to analyze possible defenses. *See McConnell v. Dudley*, 144 N.E.3d 369, 376 (Ohio 2019).

The claims against Clark County, the Commissioners, and Sheriff Burchett do not survive scrutiny under the first two tiers. First, the Estate's amended complaint alleges wrongful death, falling within the scope of Ohio's immunity regime. *See* Doc. No. 11 at PageID 38–40; Ohio Rev. Code § 2744.02(A)(1). Second, all entity Defendants are "political subdivisions" because this group includes the county and the officeholders, who are sued in their official capacities. *See, e.g.*, *Lambert*, 927 N.E.2d at 591. Taking the allegations as true, the Estate's amended complaint only attacks the entity Defendants for how they operated the Clark County Jail—placing it squarely within the first prong of immunity. *See* Ohio Rev. Code § 2744.01(C)(1)(h); *Hiles v. Franklin Cnty. Bd. of Comm'rs*, No. 05AP-253, 2005 WL 3557454, at *9–10 (Ohio Ct. App. Dec. 30, 2005) (dismissing estate's tort claim against Franklin County for failing to prevent an inmate's suicide, despite his prior attempts to do so under their care). Likewise, providing medical care at the jail falls under the statute's ambit, as it, too, is a "governmental function." *See Lowe v. Cuyahoga Cnty./Bd. of Cnty. Comm'rs*, No. 1:08-CV-01339, 2013 WL 256352, at *3 (N.D. Ohio Jan. 23, 2013); *cf. Hopper v. Montgomery Cnty. Sheriff*, 310 F. Supp. 3d 911, 933 (S.D. Ohio 2017).

No exception applies. For instance, the Estate does not sue alleging negligent operation of a motor vehicle, a road defect, or some injury caused by negligent management of government property. *See* Ohio Rev. Code §§ 2744.02(B)(1), (3)–(4). Nor does it implicate Clark County's proprietary functions, since operating a jail is a "governmental function." *See* Ohio Rev. Code

7

§§ 2744.01(C)(1)(h), (G)(2). The Estate's amended complaint does not indicate an exception, as it generally alleges that the entity Defendants were "willful, wanton, reckless, and/or negligent" in their care for Kenneth in various ways. *See* Doc. No. 12 at PageID 38–39; *see also Wilson v. Stark Cnty. Dep't of Hum. Servs.*, 639 N.E.2d 105, 107 (Ohio 1994) ("[E]xcept as specifically provided in [Ohio Rev. Code §] 2744.02(B)(1), (3), (4) and (5), with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts" (citing *Garrett v. Sandusky*, 624 N.E.2d 704 (Ohio 1994))); *Fabrey v. McDonald Vill. Police Dep't*, 639 N.E.2d 31, 35 (Ohio 1994). Since no exception applies, Clark County, the Commissioners, and Sheriff Burchett—who is sued in her official capacity—are immune.[3] *See Wilson*, 639 N.E.2d at 107; *Burgess v. Doe*, 686 N.E.2d 1141, 1145 (Ohio Ct. App. 1996); *see also, e.g.*, *Hopper*, 310 F. Supp. 3d at 933.

The Estate resists this conclusion by alleging that the entity Defendants are liable for the reckless conduct of their employees and their failure to prevent overcrowding, which, in turn, caused Kenneth's death. Doc. No. 26 at PageID 105–09. This proves incorrect for two reasons. First, there is no exception for a political subdivision's immunity for its employees' willfulness, wantonness, or recklessness beyond those listed in the statute. *Wilson*, 639 N.E.2d at 107. Second, the case the Estate cites—*Morrison v. Warrensville Heights*—does not stand for the proposition cited for. No. 110234, 2022 WL 1421856, at *13–14 (Ohio Ct. App. May 5, 2022). Rather, the

---

[3] The Estate does not specifically designate which capacity Sheriff Burchett is sued in. However, in its response opposing Defendants' motion, the Estate only argues that Sheriff Burchett is not entitled to immunity as an entity, invoking the rules that govern immunity for suing Ohio governmental entities. *See* Doc. No. 26 at PageID 106–09; *Lambert*, 927 N.E.2d at 591. This indicates that the Estate only views this claim as one against Sheriff Burchett's official capacity. Even if this were in dispute, the substance of the complaint indicates that this is an official capacity claim because it only targets "policies and practices of the [Clark County Jail] and not . . . actions taken by [Sheriff Burchett] personally." *Lambert*, 927 N.E.2d at 589–90 (finding that a claim was against the Clerk of Courts's official capacity because there was no indication that the plaintiff intended to target him individually). Thus, Sheriff Burchett is only sued in her official capacity and is subject to dismissal for the reasons stated above.

court there only examined two issues: (1) whether the individual defendants were subject to the recklessness exception for liability, Ohio Rev. Code § 2744.03(A)(6)(b); and (2) whether the defendants were liable under the "emergency responder" exception to immunity, Ohio Rev. Code § 4765.49(B). *See id.* at *10–14. Neither issue is applicable to the entity Defendants, as they are not individuals subject to the recklessness exception and they were operating a jail, not providing emergency medical services within the meaning of Ohio law. *See Wilson*, 639 N.E.2d at 107; Ohio Rev. Code § 4765.01(G) (defining "emergency medical service" to mean only services provided by a limited category of "first responders"). As such, the Court declines to adopt the Estate's novel argument that the jail is responsible for overcrowding based on an alleged failure to meet its standard of care, considering it is not liable for a death connected to the jail's operation, absent an exception. Ohio Rev. Code §§ 2744.01(C)(1)(h); 2744.02(A)(1).

Taking the allegations as correct leads to one conclusion: the Estate sues the entity Defendants for their failure to prevent Kenneth's death at the Clark County Jail due to how they operated the jail. Because Ohio law precludes political subdivision liability in this instance, the entity Defendants are entitled to immunity.

### B. Statutory Immunity for Nurse Ballard and Deputy McDuffie

The three-tiered analysis is inapplicable when considering whether individual employees[4] of political subdivisions are immune. *See Anderson*, 182 N.E.3d at 1232 (citing *Rankin v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 889 N.E. 2d 521, 526 (Ohio 2008)). Employees are immune unless (1) their actions were manifestly outside the scope of their employment or

---

[4] Under Ohio law, an "employee" of a political subdivision includes any "officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision." Ohio Rev. Code § 2744.01(B). It is undisputed that Nurse Ballard and Deputy McDuffie, as full-time employees of the Clark County Jail who acted within that role, fall under this definition.

official responsibilities; (2) they acted with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) civil liability is imposed by statute elsewhere. Ohio Rev. Code § 2744.03(A)(6).

"Under Ohio law, '[w]anton misconduct is the failure to exercise any care towards those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Wilson v. Gregory*, 3 F.4th 844, 861 (6th Cir. 2021) (quoting *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012)). "Reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent." *Shalkhauser v. City of Medina*, 772 N.E.2d 129, 136 (Ohio 2002) (internal quotation marks omitted); *see also Sabo v. City of Mentor*, 657 F.3d 332, 337 (6th Cir. 2011). "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson*, 983 N.E.2d at 273 (citations omitted). "Though wantonness requires awareness of a given risk, recklessness does not." *Goodwin v. City of Painesville*, 781 F.3d 314, 334 (6th Cir. 2015) (applying Ohio law). As applicable to all three exceptions, "[m]ere negligence is insufficient to give rise to personal liability[.]'" *Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 585 (S.D. Ohio 2009) (applying Ohio law) (quoting *Fabrey*, 639 N.E.2d at 35), *aff'd*, 399 F. App'x 62 (6th Cir. 2010). Questions about whether conduct was wanton, reckless, or willful are almost always questions for a jury. *See Hunter v. Columbus*, 746 N.E.2d 246, 252 (Ohio Ct. App. 2000); *see also Sabo*, 657 F.3d at 337 (applying Ohio law).

The Estate's amended complaint plausibly alleges that Nurse Ballard knew Kenneth was

10

in danger but ignored those danger signs and placed him back in the jail's general population. *See* Doc. No. 12 at PageID 36–38. Defendants' arguments to the contrary overlook these specific allegations. Nurse Ballard's actions—by twice examining Kenneth, hearing his repeated reports that he was not suffering from withdrawal but wrongly concluding that he was in withdrawal, placing him back in the general population, and giving him alcohol withdrawal medicine—overcome the "low bar" to plausibly allege recklessness. *Myers*, 41 F.4th at 766. Moreover, the amended complaint articulates how Nurse Ballard had previously created procedures designed to screen and distinguish prisoners suffering from legitimate medical emergencies from intoxicated prisoners. Doc. No. 12 at PageID 37–38. As alleged, this have also alerted her that Kenneth needed further treatment, so her decision to place him back into the general population instead plausibly constituted recklessness. *Id.*; *see also Stefan v. Olson*, 497 F. App'x 568, 580–81 (6th Cir. 2012) (affirming denial of statutory immunity under Ohio law to a jail nurse where her observation of inmate's medical symptoms should have made her aware that he needed to see a doctor immediately and faced a substantial risk of harm without medical intervention).

Construing the allegations in the light most favorable to the Estate, it appears that Nurse Ballard "made the logical connection" that Kenneth was at risk and ill, yet chose to forego medical treatment. *Stefan*, 497 F. App'x at 578. At this early juncture, dismissal is inappropriate before further development of the evidence through discovery, especially given the distinction between negligence and recklessness often turns on facts. *See, e.g.*, *Sabo*, 657 F.3d at 337; *Elliott v. Cuyahoga Cnty. Exec. & Council*, No. 105773, 2018 WL 1448736, at *4–5 (Ohio Ct. App. Mar. 22, 2018) (trial court correctly denied judgment on the pleadings where it was pled that jail nurse ignored plaintiff's symptoms despite the obvious signs that he was in medical danger).

Upon reflection, the same is true of the allegations against Deputy McDuffie. Construing

11

the amended complaint in the Estate's favor, the Estate plausibly alleges a similar sequence of reckless, wanton, or willful misconduct: Deputy McDuffie interacted with Kenneth; observed several warning signs; and yet choose to forego protocol (including taking Kenneth's temperature) during the initial screening.  Doc. No. 12 at PageID 35, 39; *see Elliott*, 2018 WL 1448736, at *4–5.  These allegations—if true and construed in the Estate's favor—raise a plausible inference of recklessness especially when the "fact-intensive nature" of this issue makes it difficult to conclusively resolve at the motion-to-dismiss stage.  *Siefert*, 951 F.3d at 761 (citations omitted).

Thus, the Court **DENIES** the motion with respect to Ballard and McDuffie.[5]  The parties may renew their arguments after discovery.

### IV.

Based upon the foregoing, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.  The claims against Clark County, the Commissioners, and Sheriff Burchett are **DISMISSED WITHOUT PREJUDICE**.  This case, and discovery, shall proceed with respect to Defendants Nurse Ballard, Deputy McDuffie, and Dr. Smith.

**IT IS SO ORDERED.**

Date:   November 7, 2022                                s/Michael J. Newman
                                                        Hon. Michael J. Newman
                                                        United States District Judge

---

[5] In passing, Defendants mention that the claims against Nurse Ballard may be barred under Ohio Rev. Code § 2305.113(A).  Doc. No. 25 at PageID 84–85.  It is unclear whether they abandoned this argument, however, because it is never mentioned again in their motion or reply brief.  "It is not sufficient to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618 n.9 (6th Cir. 2014) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).  Accordingly, the Court does not address it at this time.