UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

RITA NOLAN,
Administrator of the Estate of
Kenneth Nolan,

    Plaintiff,

vs.

CLARK COUNTY BOARD OF
COUNTY COMMISSIONERS, *et al.*,

    Defendants.

Case No. 3:21-cv-330

District Judge Michael J. Newman
Magistrate Judge Caroline H. Gentry

---

**ORDER: (1) GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS BALLARD AND MCDUFFIE (Doc. No. 75); (2) TERMINATING DEFENDANTS BALLARD AND MCDUFFIE FROM THIS CASE; AND (3) CLARIFYING THAT DEFENDANT SMITH REMAINS IN THE LITIGATION**

---

This wrongful death case, premised solely on diversity jurisdiction and applying Ohio law, is now before the Court on a motion for summary judgment filed by Defendants Janelle Ballard and Brandon McDuffie ("Defendants").[1]  Doc. No. 75.  Plaintiff Rita Nolan, Administrator of the Estate of Kenneth Nolan, responded.  Doc. No. 80.  Defendants replied.  Doc. No. 82.  This matter is now ripe for review.

**I. BACKGROUND**

This opinion is limited only to those undisputed facts necessary to deciding the present motion.  This case concerns the death of Kenneth Nolan ("Mr. Nolan"), who unfortunately passed away in the custody of the Clark County Jail.  *See* Doc. No. 39 at PageID 150.  Plaintiff, the

---

[1] Diversity jurisdiction exists here because all Defendants are Ohio citizens, and the Estate is considered a citizen of Illinois, as Mr. Nolan was an Illinois citizen.  *See* 28 U.S.C. § 1332(c)(2).  Moreover, the Estate's sole claim is a state law wrongful death claim against Defendants.  *See* Doc. No. 12 at PageID 38.

administrator of Mr. Nolan's estate, sued jail personnel and officials responsible for his medical care, bringing a wrongful death claim under Ohio law. Doc. No. 12 at PageID 38–39. Whether Defendants Ballard—the jail nurse—and McDuffie—the booking officer—acted recklessly is central to this case.

### A. Mr. Nolan's Arrest and Booking[2]

Mr. Nolan was a 64-year-old truck driver. Doc. No. 71-1 at PageID 631. On November 20, 2019, he was driving a semi-truck in Springfield, Ohio. *Id.* A witness observed Mr. Nolan hit a fence and a pole with his truck. *Id.* at PageID 643. Shortly after, officers pulled him over. *Id.* at PageID 642. When he got out of the truck, the officers noticed that Mr. Nolan was uneasy on his feet and had slowed speech, which are signs of intoxication. *Id.* They also "located several pill bottles in the truck." *Id.* Mr. Nolan indicated that he had not taken any of the pills and did not have any medical conditions that would make him intoxicated. *Id.* The officers conducted a Horizontal Gaze Nystagmus field sobriety test, which Mr. Nolan failed because he was unable to follow the officers' instructions or follow the pen with his eyes.[3] *Id.* at PageID 642-43. Accordingly, Mr. Nolan was arrested at 6:21 P.M. for operating a commercial vehicle under the influence of alcohol or drugs. *Id.* at PageID 643.

Mr. Nolan was booked into the Clark County Jail at 10:05 P.M. *Id.* at PageID 648. McDuffie—a Clark County Deputy Sheriff—was Mr. Nolan's booking officer. *Id.*; Doc. No. 67 at PageID 425. Clark County Jail policy required that a booking officer "observe and question

---

[2] The Court takes this opportunity to remind counsel for both sides to always cite the ECF document number and PageID when referring to evidence in the record. S.D. Ohio Civ. R. 7.2(b)(3). The haphazard, inconsistent, and sometimes nonexistent citations in the summary judgment briefing documents are unacceptable and resulted in the Court spending much more time searching for the referenced information to compile the background facts.

[3] Plaintiff asserts that Mr. Nolan "neither passed nor failed" the field sobriety test, but she does not provide a citation to the record. Doc. No. 80 at PageID 1668. Instead, the record indicates that Mr. Nolan failed the test. Doc. No. 71-1 at PageID 643.

every arrestee presented for intake with regard to health needs/medical status and record the answers and observations on the Pre-Booking Medical Questionnaire Form" before placing the inmate in the general population. Doc. No. 67-1 at PageID 451. During this process, every inmate is to be screened for signs of intoxication or withdrawal. Doc. No. 67-1 at PageID 455. If an inmate has symptoms of intoxication, jail policy states that he or she should "be referred promptly to the health care staff for evaluation and treatment prior to being" placed in the general population. *Id.* McDuffie was aware of these policies. Doc. No. 67 at PageID 432.

While booking Mr. Nolan, McDuffie performed an inmate medical screening and recorded his findings on a form between 10:11 P.M. and 10:24 P.M. Doc. No. 67-1 at PageID 479-80. McDuffie filled out the form based upon his own observations and Mr. Nolan's self-reported medical history. *Id.* The form indicated that Mr. Nolan had arthritis, a heart murmur, and was on gout medication. *Id.* It also specified that he did not appear to be under the influence of drugs or alcohol, experiencing symptoms of withdrawal, suffering from a fever or infection, or facing any other medical problem. *Id.*

McDuffie also filled out a Pre-Booking Medical Questionnaire Form which contained twelve questions. Doc. No. 67-1 at PageID 484. The questionnaire stated that "[i]f the answer is YES to any of these, other than 12, contact the Medical Department for an on-site evaluation prior to accepting." *Id.* If the Medical Department is unavailable, the shift supervisor should be contacted instead. *Id.* The form indicated that question 9—whether the arrestee has a heart condition—and question 12—whether the arrestee appears to be under the influence of drugs or alcohol—were checked "YES." *Id.* However, the "Medical Department Review" part of the questionnaire was not filled out or signed. *Id.* McDuffie did not remember whether he contacted medical staff or the shift supervisor. Doc. No. 67 at PageID 433-34. McDuffie placed Mr. Nolan

3

in the general population for the night. Doc. No. 67-1 at PageID 479-80.

### B. Mr. Nolan's Medical Issues and Treatment at the Clark County Jail

On the morning of November 21, 2019, Mr. Nolan was taken to the Springfield Municipal Court to be arraigned at 9:00 A.M. Doc. No. 71 at PageID 619, 624 He stumbled once while walking to the court. *Id.* at PageID 624. Nurse Ballard was not notified of this incident. Doc. No. 73 at PageID 676.

When Mr. Nolan was transported back to the Clark County Jail, he was again placed in the general population. Doc. No. 73 at PageID 677. At approximately 11:45 or 11:50 A.M., Ballard was called to check on Mr. Nolan. *Id.* The other inmates nearby reported to her that he had been standing when he shook and fell to the ground, and they believed he may have had a seizure. *Id.* at PageID 664. When Ballard arrived at Mr. Nolan's cell, he was awake and sitting on his mattress. Doc. No. 73-1 at PageID 791. Ballard noted that Mr. Nolan had a small abrasion on his elbow, he denied drug or alcohol use, and he answered all her questions appropriately.[4] *Id.* She also documented that Mr. Nolan's blood pressure was 130 over 70 and his heart rate was 130. *Id.* She checked his temperature with her hand and determined that it was normal. Doc. No. 73 at PageID 677. She did not take his temperature with a thermometer. *Id.* Ballard also noted that Mr. Nolan should be monitored closely and that she would review the situation with a doctor. Doc. No. 73-1 at PageID 791.

Ballard then went to the nursing office to contact the Clark County Jail doctor—Wade Smith, D.O.[5]—for guidance. Doc. No. 73 at PageID 664. Ballard left Mr. Nolan in his cell in the

---

[4] Ballard provided a more detailed account of her first encounter with Mr. Nolan in her deposition. Doc. No. 73 at PageID 644. However, Plaintiff disputes most of Ballard's actions outside of those documented in her notes. Doc. No. 80 at PageID 1681.
[5] Dr. Smith is a Defendant in this case. However, he did not join Ballard and McDuffie in this motion for summary judgment. *See* Doc. No. 75.

general population and told him that she would return to check on him. *Id.* Over the phone, Dr. Smith directed Ballard to give Mr. Nolan Librium, a drug used to treat symptoms of withdrawal. *Id.* at PageID 681. As Ballard was getting off the phone with Dr. Smith, she received a call from a Deputy Sheriff about Mr. Nolan. *Id.* at PageID 700. She was notified that Mr. Nolan had soiled himself; he was being cleaned up; and he was going to be moved to an isolation cell. *Id.* Ballard obtained some medications, including Librium, and went to find Mr. Nolan. *Id.* Upon reaching him, Ballard tried talking to him, but he did not talk back. *Id.* at PageID 699. Mr. Nolan was "a little unsteady[,]" but was able to sit up and take the Librium medication. *Id.* Ballard then checked his vital signs. *Id.* Her notes indicated that his skin was warm but not hot, his blood pressure was 140 over 72, his heart rate was 141, his respirations were rapid, and his blood oxidation level was 96. *Id.* at 699-700. At approximately 12:38 P.M., Ballard made the determination to call a rescue squad to transport Mr. Nolan to an emergency department. *Id.* at PageID 699.

When EMTs arrived at the Clark County Jail, Ballard updated them on Mr. Nolan's condition and symptoms. *Id.* at PageID 685. While Mr. Nolan was being transported to the emergency department of the Springfield Regional Medical Center ("SRMC"), Ballard called the emergency room charge nurse to notify him or her about Mr. Nolan's medical situation. *Id.*

**C. Mr. Nolan's Treatment Outside of Clark County Jail**

Mr. Nolan was admitted to SRMC at approximately 1:10 P.M. and received a physical examination. Doc. No. 73-1 at PageID 793. His temperature was recorded at 98 degrees when he arrived. *Id.* at PageID 794-95. Besides noting that Mr. Nolan had an "altered mental status" and "appear[ed] drowsy and ill[,]" no other abnormal symptoms were recorded. *Id.* at PageID 793-94. However, by 6:39 P.M., Mr. Nolan's temperature was recorded at 105.8 degrees. *Id.* at PageID 798. By 7:11 P.M., a SRMC doctor recorded that his clinical impression of Mr. Nolan was severe

sepsis with septic shock, acute respiratory failure with hypoxemia, and a fever of unspecified cause. *Id.* at PageID 796. Ultimately, however, the SRMC doctors were unable to determine the exact cause of Mr. Nolan's condition. Doc. No. 69 at PageID 587. Six days later, on November 27, 2019, Mr. Nolan was transferred to the Ohio State University Hospital in Columbus to be assessed by cardiac specialists. *Id.* at PageID 580. Mr. Nolan passed away two days thereafter, on November 29, 2019, due to endocarditis (an infection of the heart) and sepsis. *Id.*

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden is on the moving party to show no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A) and (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he non-moving party . . . may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).

Additionally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted).  Instead, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.* at 406.

### III.  ANALYSIS

Plaintiff brings only one claim against the jail Defendants: wrongful death under Ohio Revised Code § 2125.02.  Doc. No. 12 at PageID 38-40.  Defendants argue they are entitled to summary judgment for two reasons: political subdivision immunity and lack of proximate cause.  Doc. No. 75 at PageID 806.

**A.  Political Subdivision Immunity**

Plaintiff admits that Defendants are being sued for conduct occurring within the scope of their employment with Clark County, an Ohio political subdivision.  Doc. No. 80 at PageID 1673.  As employees of a political subdivision, Defendants are entitled to immunity from liability unless their "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" Ohio Rev. Code § 2744.03(A)(6)(b); Doc. No. 80 at PageID 1673-74.  Plaintiff asserts that Defendants are not entitled to immunity because their conduct was reckless.  Doc. No. 80 at PageID 1675.

"Reckless conduct" under Ohio law is "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012).  Plaintiff can show that Defendants acted recklessly based on their actual knowledge of the risk of harm or under the objective standard that the risk was "obvious." *Wilson v. Gregory*, 3 F.4th 844, 861 (6th Cir. 2021).

7

Typically, whether a person is entitled to immunity under O.R.C. § 2744.03(A)(6)(b) is a question of law for determination by the Court. *Caudill v. City of Columbus*, 97 N.E.3d 800, 807 (Ohio Ct. App. 2017). Determining whether conduct is reckless, however, is "a fact-specific determination and, thus, often presents a jury question." *Id.* Nonetheless, summary judgment is appropriate where, based on the evidence in the record, "reasonable minds could only conclude that the employee did not act recklessly." *Id.*

### i. Officer McDuffie

Plaintiff argues that McDuffie's conduct was reckless because he failed to consult medical staff pursuant to Clark County Jail policy prior to placing Mr. Nolan in the general population. Doc. No. 80 at PageID 1675. The Court disagrees and finds McDuffie entitled to statutory immunity for two reasons.

First, Plaintiff does not show that the risk to Mr. Nolan was "known or obvious" at the time McDuffie booked him. *See Anderson*, 983 N.E.2d at 273. Without question, Mr. Nolan's endocarditis and sepsis constitute conditions that create a risk of harm, given that they ultimately caused his death. *See, e.g., Ruiz-Bueno v. Scott*, 639 Fed. App'x 354, 359 (6th Cir. 2016) (concluding that a heart condition that led to the death of an inmate created an objective risk of harm). However, Plaintiff points to no evidence in the record showing that McDuffie was subjectively aware (or should have been aware) of either of these conditions at the time in question. *See* Doc. No. 80 at PageID 1675-79. Plaintiff also fails to show that the risk was obvious. *See id.* Plaintiff argues that because Mr. Nolan appeared intoxicated and had a heart murmur, McDuffie should have referred him to jail medical staff. *Id.* at PageID 1678. At most, the undisputed expert testimony now before the Court establishes that a heart murmur may potentially be indicative of a dangerous condition. Doc. No. 78-5 at PageID 1428-29. However, Plaintiff does not explain how

8

this information would make it obvious that Mr. Nolan: (1) was suffering from endocarditis or sepsis; or (2) would likely suffer injury if not checked by the jail medical staff during the booking process. *See* Doc No. 80 at PageID 1675-79. Overall, there is no evidence that McDuffie knew— or a reasonable person in his position would have known—Mr. Nolan was having a severe medical issue at the time of booking.

Second, and in the alternative, even if the risk was known or obvious, Plaintiff does not show that McDuffie consciously disregarded or was indifferent to this risk. *See Anderson*, 983 N.E.2d at 273. The Ohio Supreme Court has explained "that the violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct, but may be relevant to determining the culpability of a course of conduct." *Anderson*, 983 N.E.2d at 274. However, "without evidence of an accompanying knowledge that the violations will in all probability result in injury, evidence that policies have been violated demonstrates negligence at best." *Id.* (internal quotations and citations omitted). Here, viewed in the light most favorable to Plaintiff, the record shows that McDuffie violated Clark County Jail policy by not ensuring Mr. Nolan was checked by jail medical staff before placing him into the general population. Doc. No. 67-1 at PageID 455, 479-80, 484. However, Plaintiff does not explain how violating this policy would "in all probability, result in injury" to Mr. Nolan. *See* Doc. No. 80 at PageID 1675-79.

Thus, a reasonable finder of fact could not conclude that McDuffie acted recklessly in booking Mr. Nolan. McDuffie is therefore entitled to statutory immunity and summary judgment.

    **ii. Nurse Ballard**

Plaintiff asserts that Ballard's conduct was reckless because she did not immediately take Mr. Nolan to an isolated medical exam room and did not perform a complete examination when

9

she was notified that he may have had a seizure. Doc. No. 80 at PageID 1680. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Ballard knew—or a reasonable person in her position would have known—Mr. Nolan was facing an unjustifiable risk to his health when he reportedly collapsed and may have suffered a seizure. *See Mercer v. Athens Cnty., Ohio*, 72 F.4th 152, 162 (6th Cir. 2023) (concluding a jail nurse should have known an inmate was suffering a serious medical condition when there were reports that the inmate suffered multiple seizures, had a headache, and urinated on herself). However, Ballard is entitled to statutory immunity because—although Mr. Nolan showed signs of a risk to his health—she did not "conscious[ly] disregard" or show "indifference to" his medical condition. *See Anderson*, 983 N.E.2d at 273.

Viewed in the light most favorable to Plaintiff, the record shows that Ballard's conduct did not meet the applicable medical standard of care because she failed to immediately move Mr. Nolan to an isolated medical exam room and did not perform—or did not document—"crucial assessments and vital signs." Doc. No. 78-3 at PageID 1166 (expert report of Debra Jezard, R.N.). Evidence that a defendant breached an existing standard of care within the medical community, without more, is insufficient to show recklessness under Ohio law. *Burgess v. Fischer*, 735 F.3d 462, 481 (6th Cir. 2013). By contrast, evidence that a jail nurse did not seek additional medical assistance from a doctor or hospital—when an inmate was potentially suffering a serious medical issue—can show recklessness. *See Mercer*, 72 F.4th at 162, 165 (holding a reasonable jury could find a jail nurse acted recklessly by not seeking additional medical assistance from a doctor or hospital after reports that the inmate suffered multiple seizures and urinated on herself).

Plaintiff does point to any evidence that Ballard acted with indifference to Mr. Nolan's medical condition. *See* Doc. No. 80 at PageID 1680-83. Although Ballard may have possibly

breached the applicable standard of care—an issue the Court does not reach or decide today—the record shows that Ballard understood Mr. Nolan was undergoing a medical issue and she actively worked to determine the best course of action to treat him. *See* Doc. No. 73-1 at PageID 791. After her first interaction with Mr. Nolan, Ballard noted that he should be monitored closely, and she contacted Dr. Smith for advice. Doc. No. 73 at PageID 664; Doc. No. 73-1 at PageID 791. When Ballard reassessed Mr. Nolan and realized his medical condition had worsened, she called a rescue squad to take him to the hospital. Doc. No. 73 at PageID 699. Between the time Ballard first examined Mr. Nolan and the time EMTs arrived, approximately less than an hour had passed, and Ballard continuously worked on Mr. Nolan's case. *Id.* at PageID 697. Thus, Plaintiff has not presented evidence that Ballard "conscious[ly] disregard[ed]" or showed "indifference to" Mr. Nolan's medical condition. *See Anderson*, 983 N.E.2d at 273.

Therefore, a reasonable juror could not find that Ballard acted recklessly in examining and treating Mr. Nolan. Ballard is entitled to statutory immunity and summary judgment.

### B. Proximate Cause

Assuming, *arguendo*, that Defendants are not entitled to statutory immunity, summary judgment would still be appropriate because Plaintiffs have not shown Defendants' conduct proximately caused Mr. Nolan's death. To maintain a wrongful death claim under Ohio law, Plaintiff must show, among other things, that Defendants' wrongful acts proximately caused the death of the decedent. *Bailey v. U.S.*, 115 F.Supp.3d 882, 889 (N.D. Ohio 2015) (citing *Mansour v. Woo*, No. 2011-A-0038, 2012 WL 1493862, at *7 (Ohio Ct. App. April 30, 2012)). Plaintiff can establish proximate cause by showing that a wrongful act, "in a natural and continuous sequence, produce[d] a result that would not have taken place without the act." *Id.* (internal citations omitted). "Proximate cause is normally a question of fact for the jury, […] but where

11

there is no evidence to establish causation, the trial court must grant summary judgment on a properly supported motion." *Oiler v. Willke*, 642 N.E.2d 667, 670 (Ohio Ct. App. 1994). To survive summary judgment, Plaintiff must present evidence that goes beyond "mere speculation or conjecture" of the cause of the event at issue. *Bailey*, 115 F.Supp.3d at 889 (internal citations omitted); *see Oiler*, 642 N.E.2d at 670 (affidavit of a doctor stating—to a reasonable degree of medical probability—that the decedent contracted a deadly disease due to the defendant's action was sufficient to show proximate cause and survive summary judgment).

Plaintiff argues that the actions of both McDuffie and Ballard caused delays in Mr. Nolan's medical care that proximately caused his death. Doc. No. 80 at PageID 1688-90. However, the evidence Plaintiff provides does not show that Mr. Nolan would not have died had Defendants followed the applicable jail policies and applied the appropriate medical standard of care. Instead, Plaintiff's argument requires several degrees of speculation.

First, Plaintiff asserts that McDuffie's allegedly wrongful act—failing to get Mr. Nolan an examination by jail medical staff during the booking process—caused a delay in the treatment of Mr. Nolan's endocarditis and sepsis that ultimately caused his death. Doc. No. 80 at PageID 1688. However, even if McDuffie had followed jail policy regarding medical screening, Plaintiff does not present evidence showing that Mr. Nolan's endocarditis or sepsis would have been detected by this examination. *See* Doc. No. 80 at PageID 1688-90. Moreover, while Plaintiff's expert witness—Jeffrey Keller, M.D.—states that having more time to treat such an infection can be the difference between life and death, he did not know if Mr. Nolan would have survived had he been treated immediately. Doc. No. 78-2 at PageID 1002. Thus, Plaintiff merely speculates that: (1) jail medical staff would have detected Mr. Nolan's infection upon a booking examination; and (2)

detecting the infection approximately fourteen hours earlier would have prevented the infection from taking his life.

Second, Plaintiff contends that Ballard's failure to call the rescue squad immediately after Mr. Nolan's reported seizure caused a delay in his treatment that proximately caused his death. Doc. No. 80 at PageID 1690. However, Plaintiff only references expert testimony supporting the general proposition that a delay in care can cause a higher risk of death. *Id.* Again, Plaintiff fails to provide Rule 56 materials to explain how detecting the infection approximately one hour earlier would, to a reasonable degree of medical certainty, have saved Mr. Nolan's life. *See id.* Plaintiff merely speculates that if Mr. Nolan were transported to the hospital an hour earlier, his chances of survival would have increased. *See id.*

Therefore, Plaintiff has not presented sufficient evidence to show that Defendants' actions proximately caused Mr. Nolan's death, and Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated, the Court (1) **GRANTS** Defendants' motion for summary judgment (Doc. No. 75); (2) **TERMINATES** Defendants Ballard and McDuffie from this case; and (3) **CLARIFIES** that Defendant Smith remains in the litigation.

**IT IS SO ORDERED.**

  May 6, 2024                                                        s/Michael J. Newman
                                                                                  Hon. Michael J. Newman
                                                                                  United States District Judge