UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

RITA NOLAN,
Administrator of the Estate of
Kenneth Nolan,

    Plaintiff,

vs.

CLARK COUNTY BOARD OF
COUNTY COMMISSIONERS, *et al.*,

    Defendants.

Case No. 3:21-cv-330

District Judge Michael J. Newman
Magistrate Judge Caroline H. Gentry

**ORDER: (1) GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT DR. SMITH (Doc. No. 84); AND (2) TERMINATING THIS CASE ON THE DOCKET**

This case concerns the death of Kenneth Nolan ("Mr. Nolan"), who passed away following his detention at the Clark County, Ohio Jail ("the Jail"). *See* Doc. No. 39 at PageID 150. Plaintiff Rita Nolan, the administrator of Mr. Nolan's estate, sued jail personnel and officials responsible for his medical care, bringing a wrongful death claim under Ohio law. Doc. No. 12 at PageID 38–39. The case is now before the Court on a motion for summary judgment filed by the only remaining Defendant, Wade G. Smith, D.O.[1] Doc. No. 84. Plaintiff has responded. Doc. No. 87. Dr. Smith has replied. Doc. No. 88. This matter is thus ripe for review. Although the Court is saddened and troubled by Mr. Nolan's death, following Ohio law, as it must, leads to the inevitable conclusion that, based on the evidence before it, Plaintiff has not rebutted the summary judgment

---

[1] Diversity jurisdiction exists here because all Defendants are Ohio citizens, and the Estate is considered a citizen of Illinois, as Mr. Nolan was an Illinois citizen. *See* 28 U.S.C. § 1332(c)(2). Moreover, the Estate's sole cause of action is a state-law wrongful death claim against Defendant Dr. Smith. *See* Doc. No. 12 at PageID 38. Accordingly, Ohio law controls. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

evidence produced by Dr. Smith.

## I. BACKGROUND

For purposes of judicial economy, the Court adopts the Background section of its prior Order granting summary judgment in favor of former Defendants Janelle Ballard and Brandon McDuffie.[2] Doc. No. 85 at PageID 1766-71. This opinion also contains a description of the undisputed facts necessary to resolve the present motion.

### A. Mr. Nolan's Arrest and Booking

Mr. Nolan was a 64-year-old truck driver. Doc. No. 71-1 at PageID 631. On November 20, 2019, he was driving a semi-trailer truck in Springfield, Ohio. *Id.* At 6:21 P.M., Mr. Nolan was arrested under suspicion of operating a commercial vehicle under the influence of alcohol or drugs. *Id.* at PageID 643. McDuffie, a Clark County Deputy Sheriff, booked Mr. Nolan into the Clark County Jail at 10:05 P.M. *Id.* at PageID 648; Doc. No. 67 at PageID 425. The Jail's policy requires a booking officer to screen arrestees for signs of intoxication or withdrawal. Doc. No. 67-1 at PageID 455. If an inmate has symptoms of intoxication, jail policy states that he or she should "be referred promptly to the health care staff for evaluation and treatment prior to being" placed in the Jail's general population. Doc. No. 67-1 at PageID 455.

While booking Mr. Nolan, McDuffie performed an inmate medical screening and recorded his findings on two forms. *Id.* at PageID 479-80, 484. Although the circumstances of the arrest and one of the forms indicated Mr. Nolan was exhibiting signs of intoxication, McDuffie nonetheless placed Mr. Nolan in the Jail's general population for the night. Doc. No. 67-1 at PageID 479-80.

---

[2] The Court granted summary judgment in favor of former Defendants Ballard and McDuffie because the Court found they were entitled to statutory immunity and Plaintiff had not shown their conduct proximately caused Mr. Nolan's death. Doc. No. 85 at PageID 1766-78.

### B. Mr. Nolan's Medical Issues and Treatment at the Jail

The next day, on the morning of November 21, 2019, Mr. Nolan was taken to the Springfield Municipal Court to be arraigned at 9:00 A.M. Doc. No. 71 at PageID 619, 624. He stumbled once while walking to court. *Id.* at PageID 624. Ballard, the Jail's nurse, was not notified of this incident. Doc. No. 73 at PageID 676.

When Mr. Nolan was transported back to the Jail, he was again placed in the general population. Doc. No. 73 at PageID 677. At approximately 11:45 or 11:50 A.M., Ballard was called to check on Mr. Nolan. *Id.* The other inmates nearby reported to her that he had been standing when he shook and fell to the ground, and they believed he may have had a seizure. *Id.* at PageID 664. Ballard went to Mr. Nolan's cell and evaluated his condition. Doc. No. 73-1 at PageID 791. She noted that Mr. Nolan should be monitored closely and that she would review the situation with a doctor. *Id.* Ballard then left Mr. Nolan in his cell and told him that she would return to check on him. Doc. No. 73 at PageID 664.

Ballard went to the nursing office to contact the Jail's doctor—Defendant Dr. Smith—for guidance. *Id.* Dr. Smith, who has served as the Jail physician and Jail Medical Director for over 17 years, is board certified in emergency medicine. Doc. No. 79-1 at PageID 1537-38, 1545. As the Jail's Medical Director, Dr. Smith provides medical care and treatment to detainees. *Id.* at PageID 1543-44. Additionally, Dr. Smith assists in developing health care policies and procedures for the Jail; serves as the liaison between Jail administration, local hospitals, and other state agencies; and assists in quality improvement monitoring of the Jail's health care operations. Doc. No. 84 at PageID 1734. He is required to be onsite at the Jail three days a week for up to five hours and on call twenty-four hours a day, seven days a week, to provide care and treatment to inmates with a medical need at the Jail. *Id.* In addition to his role as the Jail's physician and

Medical Director, he is an emergency physician at satellite offices for the Springfield Regional Medical Center ("SRMC").  Doc. No. 79-1 at PageID 1533-34.

Dr. Smith remembered receiving a phone call from Ballard at approximately 12:00 P.M., and his treatment of Mr. Nolan began at that time.  *Id.* at PageID 1571.  Ballard told Dr. Smith about the situation with Mr. Nolan, including: (1) she was called to Mr. Nolan's cell due to a potential seizure; (2) Mr. Nolan was seated and able to answer questions when she arrived; (3) Mr. Nolan was arrested on a DUI charge the prior evening; and (4) Mr. Nolan had tachycardia and normal blood pressure.  *Id.* at PageID 1571-72.  Based on this information, Dr. Smith did not conclusively determine the cause of Mr. Nolan's symptoms.  *Id.* at PageID 1572.  However, he and Ballard did not believe Mr. Nolan had suffered a seizure because he was responsive during Ballard's assessment.  *Id.*  Dr. Smith determined Mr. Nolan may be suffering from alcohol withdrawal.  *Id.*  He directed Ballard to give Mr. Nolan Librium, a drug used to treat symptoms of withdrawal, and to recheck his condition an hour later, and if Mr. Nolan did not improve, to send him to the hospital.  *Id.*

Soon after Ballard talked with Dr. Smith, she was notified that Mr. Nolan had soiled himself.  Doc. No. 73 at PageID 700.  Ballard then took Librium to Mr. Nolan.  *Id.*  Upon reaching him, Ballard tried talking to him, but he did not talk back.  *Id.* at PageID 699.  Mr. Nolan was "a little unsteady," but was able to sit up and take the Librium.  *Id.*  Ballard then checked his vital signs.  *Id.*  Her notes indicate that his skin was warm but not hot, his blood pressure was 140 over 72, his heart rate was 141, his respiration was rapid, and his blood oxidation level was 96.  *Id.* at 699-700.  At approximately 12:38 P.M., Ballard decided to call a rescue squad to transport Mr. Nolan to an emergency department.  *Id.* at PageID 699.  She informed Dr. Smith by call or text that she had called emergency services.  Doc. No. 79-1 at PageID 1573.  Dr. Smith's involvement

4

with Mr. Nolan ended at this point. *Id.* at PageID 1647.

### C. Mr. Nolan's Treatment Outside of the Jail

Mr. Nolan was admitted to the SRMC emergency department at approximately 1:10 P.M. and received a physical examination. Doc. No. 73-1 at PageID 793. His temperature was recorded at 98 degrees when he arrived. *Id.* at PageID 794-95. Besides noting that Mr. Nolan had an "altered mental status" and "appear[ed] drowsy and ill[,]" no other abnormal symptoms were recorded. *Id.* at PageID 793-94. However, by 6:39 P.M., Mr. Nolan's temperature was 105.8 degrees. *Id.* at PageID 798. By 7:11 P.M., a SRMC doctor recorded that his clinical impression of Mr. Nolan was severe sepsis with septic shock, and acute respiratory failure with hypoxemia. *Id.* at PageID 796. Ultimately, however, SRMC doctors were unable to determine the exact cause of Mr. Nolan's condition. Doc. No. 69 at PageID 587. Plaintiff was never told a diagnosis for Mr. Nolan while he was at SRMC. *Id.* at PageID 580.

Six days later, on November 27, 2019, Mr. Nolan was transferred to the Ohio State University Hospital in Columbus to be assessed by cardiac specialists to see if they could determine the cause of his health problems. *Id.* at PageID 580, 587. Mr. Nolan passed away two days later, on November 29, 2019, due to endocarditis (an infection of the heart) and sepsis. *Id.*

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden is on the moving party to show no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents,

5

electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A) and (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "[t]he non-moving party . . . may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).

Additionally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'"  *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted).  Instead, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not."  *Id.* at 406.

### III. ANALYSIS

Plaintiff brings only one claim against Dr. Smith: wrongful death under Ohio Revised Code § 2125.02. [3]  Doc. No. 12 at PageID 38-40.  Dr. Smith argues he is entitled to summary judgment for two reasons: political subdivision immunity and lack of proximate cause.  Doc. No. 84 at

---

[3] In her summary judgment opposition memorandum, Plaintiff states that her "claims against Defendant Dr. Smith are for common law medical malpractice and wrongful death." Doc. No. 87 at PageID 1786. However, Plaintiff never pled a medical malpractice claim—or used the word "malpractice"—in her amended complaint. *See* Doc. No. 12. Thus, the Court finds that the only claim against Dr. Smith is a wrongful death claim. *See Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 Fed. App'x 659, 666 (6th Cir. 2012) (finding that a plaintiff "did not properly present [new] claims before the district court" when he "rais[ed] the claims for the first time in his opposition to summary judgment").

PageID 1720-30.  The Court addresses these arguments in turn.

### A. Political Subdivision Immunity

Plaintiff alleges in her amended complaint that the Clark County Board of Commissioners "contracted with . . . [Dr.] Smith to provide medical care to inmates at the Clark County Jail" and that, at the time of Mr. Nolan's death, "[Dr.] Smith was a physician and agent of Defendant Clark County acting within the scope of his employment."  Doc. No. 12 at PageID 31-32.  In her opposition memorandum, Plaintiff argues, for the first time, that Dr. Smith is, instead, an independent contractor, not an agent or employee of Clark County.  Doc. No. 87 at PageID 1787-92.

Plaintiff has not properly presented her independent contractor claim before the Court.  "A plaintiff may not expand [her] claims to assert new theories for the first time in response to a summary judgment motion." *Desparois*, 455 Fed. App'x at 666 (citing *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)); *see also Tucker v. Union of Needletrades, Indus. and Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)") (citation omitted).  Accordingly, Plaintiff was obligated to seek leave to amend her amended complaint to include the assertion that Dr. Smith was an independent contractor.  This did not happen here.  Therefore, the Court declines to consider Plaintiff's newly-made independent contractor assertion and restricts itself to the assertions in her amended complaint, *i.e.*, that Dr. Smith was an employee of Clark County at the time in question. Alternatively, even if the Court assumes Dr. Smith is an independent contractor, Plaintiff still fails to show Dr. Smith's conduct proximately caused Mr. Nolan's death.  *See infra*

Section III(B).

### i. Official Capacity Immunity

Dr. Smith moved for summary judgment alleging that Ohio's statutory immunity scheme shields him from liability in both his official and individual capacities. Doc. No. 84 at PageID 1720-28. Plaintiff argues that because the claim at issue is a claim against Dr. Smith as an individual, there is no need for the Court to engage in statutory immunity analysis for Dr. Smith in his official capacity. Doc. No. 87 at PageID 1786.

Plaintiff is correct. *See Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015) (Under Ohio law, the three-tiered analysis applies to claims brought against political subdivision employees in their official capacity because such claims "are the equivalent of claims brought against the county as a government entity"). Plaintiff does not assert her wrongful death claim against Dr. Smith in his official capacity, only in his individual capacity. S*ee* Doc. No. 87 at PageID 1786. Thus, the Court turns to the statutory immunity analysis for Dr. Smith in his individual capacity.

### ii. Individual Capacity Immunity

Plaintiff acknowledges that Dr. Smith is being sued for conduct occurring within the scope of his employment with Clark County, an Ohio political subdivision. Doc. No. 12 at PageID 32; see Doc. No. 87 at PageID 1786-87.

As an employee of a political subdivision, Dr. Smith is entitled to immunity from liability unless his "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" Ohio Rev. Code § 2744.03(A)(6)(b); Doc. No. 87 at PageID 1786-87. "Reckless conduct" under Ohio law is "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than

8

negligent conduct." *Anderson v. City of Massillon*, 134 Ohio St. 3d 380, 388 (2012).  A plaintiff can show that a defendant acted recklessly based on his or her knowledge of the risk of harm or under an objective standard—*i.e.*, that the risk was "obvious." *Wilson v. Gregory*, 3 F.4th 844, 861 (6th Cir. 2021).

Typically, whether a person is entitled to immunity under Ohio Rev. Code § 2744.03(A)(6)(b) is a question of law for determination by the Court.  *Caudill v. City of Columbus*, 97 N.E.3d 800, 807 (Ohio Ct. App. 2017).  However, determining whether conduct is reckless is "a fact-specific determination and, thus, often presents a jury question."  *Id.*  Nonetheless, summary judgment is appropriate where, based on the evidence in the record, "reasonable minds could only conclude that the employee did not act recklessly." *Id.*

In her amended complaint, Plaintiff asserts that Dr. Smith was "willful, wanton, reckless, and/or negligent in [his] care and treatment of [Mr. Nolan]." Doc. No. 12 at PageID 39.  However, in her summary judgment opposition memorandum, Plaintiff does not assert or provide any evidence that Dr. Smith was reckless.  Plaintiff must go beyond her amended complaint and present evidence that shows there is a genuine issue for trial to survive a motion for summary judgment. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Plaintiff does not point to any evidence indicating that Dr. Smith acted with indifference to Mr. Nolan's medical condition.  Although Dr. Smith may have possibly breached the applicable standard of care—an issue the Court does not reach or decide today—the record shows that Dr. Smith understood Mr. Nolan was suffering from one or more medical issues, and he actively provided a plan for a reasonable course of treatment given Mr. Nolan's symptoms.  Doc. No. 79-1 at PageID 1572.  Since Plaintiff has not presented evidence suggesting that Dr. Smith "conscious[ly] disregard[ed]" or showed "indifference to" Mr. Nolan's medical condition—in

9

other words, that he acted "recklessly" within the meaning of Ohio law—she has not met her burden in response to Dr. Smith's motion for summary judgment. *See Anderson*, 134 Ohio St. 3d at 388.

Therefore, a reasonable juror could not find that Dr. Smith acted recklessly in treating Mr. Nolan. Dr. Smith is entitled to statutory immunity and summary judgment.

### B. Proximate Cause

Assuming, *arguendo*, that Dr. Smith is not protected by statutory immunity, summary judgment would still be appropriate because Plaintiff has not shown Dr. Smith's conduct proximately caused Mr. Nolan's death. To maintain a wrongful death claim under Ohio law, Plaintiff must show, among other things, that Defendant's wrongful acts proximately caused Mr. Nolan's death. *Bailey v. United States*, 115 F.Supp.3d 882, 889 (N.D. Ohio 2015) (citing *Mansour v. Woo*, No. 2011-A-0038, 2012 WL 1493862, at *7 (Ohio Ct. App. April 30, 2012)). Plaintiff can establish proximate cause by showing that a wrongful act, "in a natural and continuous sequence, produce[d] a result that would not have taken place without the act." *Id.* (internal citations omitted). "Proximate cause is normally a question of fact for the jury, […] but where there is no evidence to establish causation, the trial court must grant summary judgment on a properly supported motion." *Oiler v. Willke*, 95 Ohio App.3d 404, 409 (1994). To survive summary judgment, Plaintiff must present evidence that goes beyond "mere speculation or conjecture" of the cause of the event at issue. *Bailey*, 115 F.Supp.3d at 889 (internal citations omitted); *see Oiler*, 95 Ohio App.3d at 409 (affidavit of a doctor stating—to a reasonable degree of medical probability—that the decedent contracted a deadly disease due to the defendant's action was sufficient to show proximate cause and survive summary judgment).

Plaintiff argues that Dr. Smith's actions caused a delay in Mr. Nolan's medical care that

10

proximately caused his death.  Doc. No. 87 at PageID 1795.  Specifically, Plaintiff contends that Dr. Smith's failure to ensure delivery of proper medical care to Mr. Nolan caused a three-hour delay in his initial Jail treatment, *i.e.*, from 9 A.M. to 12:00 P.M. on November 21, 2019.  Doc. No. 87 at PageID 1797.  However, Plaintiff bases her argument on the assertion that Dr. Smith should have seen Mr. Nolan in person or had him sent to the emergency room on November 21 at 9:00 A.M. when he stumbled into Court (this is despite Dr. Smith only learning about Mr. Nolan's worsening condition at approximately 12:00 P.M.—one hour before he was sent to the emergency room).  Doc. No. 79-1 at PageID 1571.  Thus, Plaintiff merely speculates that: (1) Dr. Smith would have detected Mr. Nolan's infection, or would have sent him to the emergency room if proper medical care was given at 9:00 A.M.; and (2) detecting the infection approximately three hours earlier would have prevented the infection from taking his life.  Significantly, Plaintiff does not challenge the quality (or proximate cause) of the medical care ordered to Mr. Nolan thereafter, in the six days he was treated at SRMC and the two days he was treated at Ohio State University Hospital, while under the care of other physicians and specialists.

Additionally, Plaintiff only references expert testimony supporting the general proposition that a delay in care can cause a higher risk of death.  Doc. No. 87 at PageID 1795-97.  Plaintiff fails to provide Rule 56 materials to explain how detecting the infection approximately three hours earlier would, to a reasonable degree of medical certainty, have saved Mr. Nolan's life.  *See id.*  Thus, Plaintiff merely speculates that if Mr. Nolan were transported to the hospital three hours earlier, his chances of survival would have increased.  *See id.*  This is insufficient under Ohio law.  *See Nye v. CSX Transp., Inc.*, 437 F.3d 556, 564-65 (6th Cir. 2006).

Therefore, Plaintiff has not presented evidence to show that Dr. Smith's actions proximately caused Mr. Nolan's death, and Dr. Smith is entitled to summary judgment.

## IV.  CONCLUSION

For the reasons stated, the Court (1) **GRANTS** Dr. Smith's motion for summary judgment (Doc. No. 84); and (2) **TERMINATES** this case on the docket.

**IT IS SO ORDERED.**

  March 21, 2025                                                   s/*Michael J. Newman*
                                                                                       Hon. Michael J. Newman
                                                                                       United States District Judge